UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                      **Hon. Hugh B. Scott**

07CR304S

CARL A. LARSON, et al.,                                 **Order**

Defendants.

Before the Court are defendants' omnibus motions[1].  These motions either seek various

forms of discovery and other relief or join in codefendants' motions seeking such relief.  These

motions were argued on December 2, 2008 (text entry, Dec. 2, 2008), and deemed submitted on

that day.  The Court considers in this Order the various motions[2] for the Government to file

individual Bills of Particulars.  In a separate Order, the Court will consider the various forms of

discovery sought by defendants.

---

[1]Docket Nos. 61, 67 (Freedenberg), 66 (Lennon), 65 (Dewald), 80 (Eddy), 70 (Peterson),
73 (Kirsch), 74 (Caggiano), 75 (Bove, Docket No. 76, supporting memorandum for bill of
particulars), 77 (Larson), 78 (Minter), 84 (Franz), and 81 (Edbauer).  Some defendants attempted
to file motions but these were rejected for ECF grounds, see Docket Nos. 68 (Eddy), 71 (Kirsch).
    In response to these motions, the Government filed a consolidated omnibus response,
Docket No. 85, as well as individual responses, Docket No. 63, to Freedenberg.
    A few defendants filed replies, Docket Nos. 86 (Peterson), 89 (Bove).  Kirsch in oral
argument referenced several cases which were separately submitted to Chambers regarding the
scope of discovery.

[2]Docket Nos. 61, 66, 65, 80,70, 75, 77, and 84; remaining defendants filed motions
joining in these motions, Docket Nos. 74, 78, and 81.

BACKGROUND

This is a racketeering conspiracy, Hobbs Act conspiracy, racketeering forfeiture, and aiding and abetting prosecution involving International Union of Operating Engineers, Local 17, AFL-CIO ("Local No. 17") (Docket No. 4, Superseding Indict.). In the Superseding Indictment (hereinafter the "Indictment"), the Government alleges that Local No. 17 functioned as a criminal enterprise from about January 1997 to December 2007 (id. ¶ 1). Defendants are officers and members of Local No. 17 (id. ¶¶ 2-8). The Indictment alleges that defendants (as a group) were willing to engage in acts and threats of violence against persons, to sabotage and destroy property on construction sites within this District (id. ¶ 9). The alleged objective of the so-called "Local 17 Criminal Enterprise" was extortion by obtaining contracts from construction firms, taking non-union jobs (with their salaries and benefits), depriving contractors of their right to make business decisions free of outside pressure, and "property of construction contractors consisting of wages and employee benefit contributions paid or to be paid by said contractors for unwanted, unnecessary, and superfluous labor" (id. ¶ 10). The Indictment lists various means "among the means and methods by which the defendants and their associates agreed to conduct" the affairs of the criminal enterprise (id. ¶ 11).

The Indictment alleges that defendants conspired to conduct the affairs of the Local 17 Criminal Enterprise through a pattern of racketeering activity (id. ¶ 12), in violation of RICO, 18 U.S.C. § 1962(d). Defendants, "together and with others," conspired to commit at least two acts of racketeering alleging attempts of extortion from different construction contractors in Western New York (id. ¶ 13, Racketeering Acts 1-11), with attempted acts in violation of the Hobbs Act, 18 U.S.C. § 1951(a), or provisions of New York State Penal Law. Different

defendants allegedly conspired to commit various racketeering acts against different contractors.

For example, Racketeering Act One alleges that defendant Larson attempted to extort jobs and

associated wages and benefits from STS Construction of Western New York at several

construction project locations, "to include, among others" Roswell Park Cancer Institute, the

Rath Building, the Buffalo Psychiatric Center, and two other named sites (id., Racketeering

Act 1).  The other racketeering counts allege attempted extortion from other contractors[3] or

conspiracy by Lennon and Edbauer to attempt extortion in violation of the Hobbs Act and New

York Penal Law (id., Racketeering Act 11).  Count Two alleges a Hobbs Act conspiracy.  One of

the overt acts alleges an unnamed business agent of Local No. 17 approached an unnamed

representative of STS Construction and then harassed that representative when STS refused to

sign a collective bargaining agreement with Local No. 17 for construction at Roswell Park (id. at

32-33, Overt Act 1).  Count Three alleges attempted Hobbs Act extortion of STS (id.  at 53);

Count Four of Zoladz Construction Company (id. at 54); Count Five of Waste Management and

Marcy Excavation Company (id. at 56); Count Six of Ontario Speciality Contracting (id. at 57);

Count Seven of Ecology & Environment and Earth Tech (id. at 58); and Count Eight of

Wadsworth Golf Construction Company for properties in Orchard Park and Cheektowaga, New

York (id. at 59).  The Indictment also alleges a RICO forfeiture claim (id. at 60-61).

---

[3]Racketeering Act 2, Zoladz Construction Company; Racketeering Act 3, Waste
Management and Marcy Excavating; Racketeering Act 4, Environmental Strategies and Ontario
Speciality Contracting; Racketeering Act 5, Ecology & Environment and Earth Tech;
Racketeering Act 6, Ingalls Site Development; Racketeering Act 7, H.G. Spicer & Sons, Inc.;
Racketeering Act 8, C.O. Falter Construction; Racketeering Act 9, Tom Greenauer Development,
Inc.; Racketeering Act 10, Wadsworth Golf Construction.

*Defense Motions*

Defendants separately moved for individual Bills of Particulars or joined in the pending codefendants' motions[4] for that relief.  They seek identification of unindicted persons that allegedly acted with them in advancing the conspiracy.  They also want to know the "among others" noted in several points in the Indictment, defendants ask whether the affected sites listed in the Indictment are exclusive and, if not, what are the others sites that were affected.  In general, defendants seek to know the particulars of their own alleged conduct.  Most defendants also seek to learn the acts of racketeering they allegedly committed for the RICO counts.

Defendants want to know the "property" that is subject to the Hobbs Act extortion.  The Indictment alleges three types of property–the right to make business decisions free from outside pressure; wages and benefits paid for unwanted, unnecessary and superfluous labor; and employees' jobs and associated wages and benefits–and, as noted by Kirsch (Docket No. 73, Def. Atty. Affirm. ¶¶ 18, 23-24), defendants need specificity as to which type of property they are accused of trying to extort.  Also defendants want particulars on what type of property alleged were benefits paid for "unwanted, unnecessary and superfluous labor" and what that phrase means and what work the Government contends is included under that phrase.  Peterson, for example, seeks particularization as to when, where, and who performed this so-called "superfluous labor" (Docket No. 70, Peterson Demand at 1, 2), arguing later that the Indictment does not describe this labor (Docket No. 86, Peterson Reply at 2).  He argues that some target companies named in the Indictment hired Local No. 17 members, raising the factual issue of which hires were "superfluous" (id. at 3).

_____

[4]See note 2, supra.

Defendants also want to learn the interstate commerce connection to these alleged criminal activities for the Hobbs Act counts.  Two defendants, Bove (Docket No. 75, Sched. 1, Bill of Particulars ¶¶ 23, 24) and Franz (Docket No. 84, Def. Atty. Aff. ¶¶ 27, 28), seek the precise property claimed to be subject to forfeiture from them and the manner in which it is alleged to have been the proceeds, or derived from the proceeds, of the charged RICO activity.

*Government's Omnibus Response*

Government responds that the Indictment was sufficiently detailed and defendants were each presented voluminous discovery and that Bills of Particulars are not warranted, that the Government is not required to outline its theories or marshal its evidence in Bills of Particulars (Docket No. 85, Gov't Response at 2-20, 2-3, 5-8, Exs. B-D (discovery letters from Government to defense counsel); <u>see</u> Docket No. 63, Gov't Response to Freedenberg Motion for Bill of Particulars).  In response to Freedenberg's demand for a Bill, the Government contends that he "utterly failed to adequately specify the basis for his needs for these particulars" (Docket No. 63, Gov't Response to Freedenberg at 1).  The Government contends that the other defendants fail to provide sufficient justification for particularization (Docket No. 85, Gov't Response at 5).

DISCUSSION

I.    Bills of Particulars

Each defendant seeks an individual Bill of Particulars or joins in motions of codefendants for such Bills.  For example, Freedenberg seeks identification of the others known to the Grand Jury listed with the indicted conspirators in ¶ 1 of the Superseding Indictment (Docket No. 61, Freedenberg Demand for Bill of Particulars ¶ 1).  He also asked for particulars as to how he was involved in alleged wrong doing regarding Wadsworth Golf Construction (<u>id.</u> ¶¶ 11-13).

Defendants have sought particularization as to which activities affected interstate commerce (e.g., Docket No. 65, Dewald Atty. Aff. ¶ 41, Nos. 2, 6) or want to know precisely what "unwanted, unnecessary and superfluous labor" was alleged in the Indictment (e.g., id. ¶ 41, No. 5).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars, and it is within this Court's discretion to order such a filing, Wong Tai v. United States, 273 U.S. 77, 82 (1927).  The Court, in exercising that discretion, "must examine the totality of the information available to the defendants–through the indictment, affirmations, and general pretrial discovery–and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted," United States v. Bin Laden, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) (Docket No. 85, Gov't Response at 4). Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial.  United States v. Torres, 901 F.2d 205 (2d Cir. 1990).  The Government is not obligated to "preview its case or expose its legal theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).  Defendants have the burden of articulating specific facts relating to the need for the requested information (Docket No. 85, Gov't Response at 4).  Notwithstanding the above, there is a special concern for particularization in conspiracy cases. United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

II.     Areas of Particularization

Defendants, while stating distinct areas of particularization, seek specificity in certain common areas.  While the Government characterizes the Indictment as "comprehensive" and "exhaustive" and "detail-rich" (Docket No. 85, Gov't Response at 5), its use of generic and indefinite terms among the extensive detail inhibits defendants' ability to make their respective defenses.

A.      "Property" and "Unwanted, Unnecessary, and Superfluous Labor"

Defendants want identified the "property" the Government claims defendants attempted to obtain; for example Freedenberg seeks particularization about the "property" involved with Wadsworth Golf Construction, alleged in Count 8 (Docket No. 61, Freedenberg ¶ 15).  During oral argument, Kirsch argued that the property allegations in the Indictment were ambiguous, for example in defining "unwanted, unnecessary, and superfluous labor" whether that meant creation of no-show jobs or working under union work rules.

The Government responds that the Indictment clearly identifies the property sought by the RICO conspiracy and extortion conspiracy.  In Count 1, the Government alleges four types of property (wages and benefits paid to Local No. 17 members; wages and benefits to non-union laborers; construction contractors' right to make unfettered and unpressured business decisions; and wages and benefits paid for "unwanted, unnecessary, and superfluous labor") and each racketeering act and substantive extortion count elaborates on the specific property sought from a given contractor or job site (Docket No. 85, Gov't Response at 18-19).  These allegations plus the discovery, the Government concludes, is sufficient (id. at 19), without specifying where in the

discovery that additional information has been furnished (for example) to define what is meant by the "unwanted, unnecessary, and superfluous labor."

The Government, however, does not define what constitutes "unwanted, unnecessary, and superfluous labor." As Peterson notes (Docket No. 86, Peterson Reply at 2-3), some of the target companies hired Local No. 17 members, the Indictment does not specify which of these hires were forms of extortion by the Local 17 Criminal Enterprise and which were innocent transactions. Thus, defendants' demand for particularization on this property issue **should be addressed**; defendants motions on this point is **granted**.

      B.      Unindicted Co-Conspirators and Unnamed "Others"

The Indictment alleges that defendants acted with unnamed others in advancing the conspiracy. Defendants seek the identities of these unnamed persons. The Government responds that potential witness intimidation should preclude disclosure of the identities of unindicted co-conspirators, given the size of the Local 17 Criminal Enterprise (Docket No. 85, Gov't Response at 12). The Government also argues that the volume of pretrial disclosure, cf. United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000), presented by the Government in this case (25 DVDs of recordings and 3 DVDs of copies of paper discovery) was not so voluminous as to require particularization on this issue (id. at 12-13, 11). While the Indictment is extensive and detailed, it makes references to unnamed "others" in an effort to be comprehensive (see, e.g., Docket No. 4, Superseding Indict. ¶ 13), implying that other, unspecified persons are involved.

The district court in Nachamie set forth factors whether to grant a demand for the identities of unindicted co-conspirators, 91 F. Supp. 2d at 572-73, the number of conspirators, the duration and breadth of the conspiracy, whether the Government otherwise has provided

adequate notice of the particulars, the volume of pretrial disclosure, the potential danger to co-conspirators and the nature of the alleged criminal conduct, and the potential harm to the Government's investigation (see Docket No. 85, Gov't Response at 11).  On the one hand, identification should not occur because the underlying accusation is extortion by threats of force against persons and property and the limited scope of the conspiracy (one union local) raises the specter of witness intimidation (id. at 12-13).  On the other hand, while the number of named conspirators is limited, the use of "others" leaves an unknown number of participants.  The Indictment raises the question of the number and identity of the others involved aside from the named conspirators.  The conspiracy here has been allegedly operating since January 1997.  Upon review of the Indictment, the Court finds that defendants **are entitled** to an individual Bill of Particulars on this issue.  As those identities are learned, the Government should disclose them to defendants.

C.     Identification of Specific Conduct and Participants

The Government notes that several defendants wanted particulars as to their roles in the conspiracy (see Docket No. 85, Gov't Response at 13-15).  At oral argument, Lennon asked if the means and methods described in the Indictment were exclusive or others were included.  Eddy inquired then whether the limited instances naming him in the Indictment were all that was alleged against him, seeking particularization as to other charges.  The Government objects that such particularization "is tantamount to a request for evidentiary details, which is not the proper subject of a bill of particulars" (id. at 14), see United States v. Biaggi, 675 F. Supp. 790, 809 (S.D.N.Y. 1987).  Defendants have information about seventy-five overt acts and discovery that

reveals the dates, participants, locations, and other details about the overt acts so that Bills of

Particulars should be denied (id. at 16).

The Indictment and the discovery provided to defendants provides the specifics

defendants now seek; their motions for particularization on this ground is **denied**.

        D.       Interstate Commerce

The Hobbs Act provides whoever in any way or degree obstructs, delays of affects

commerce, where "commerce" is defined as interstate, international commerce and "all other

commerce over which the United States has jurisdiction," 18 U.S.C. § 1951(a), (b)(3).  Similarly,

a racketeering conspiracy must have an enterprise that affects interstate or foreign commerce,

18 U.S.C. § 1962(a), (d) (conspiracy to violate § 1962(a)).

The Indictment alleges that the Local 17 Criminal Enterprise "was engaged in, and its

activities affected, interstate commerce" (Docket No. 4, Superseding Indict. ¶ 1) but without

specifying how interstate commerce was affected.  The activities alleged appear to have occurred

only in New York State.  Defendants seek particularization of the interstate commercial impact

of the alleged activities.  The Government does not respond to these demands.

Unlike the other categories discussed above, the interstate commerce affected by

defendants' alleged activities goes either to the Government's theory of its case, see United

States v. Perez, 940 F. Supp. 540, 550 (S.D.N.Y. 1996) (Docket No. 85, Gov't Response at 3), or

seeks evidentiary detail to support that theory, see Torres, supra, 901 F.2d at 234.  Defendants are

thus **not entitled to particularization** on the issue of interstate commerce.

E.      Formation of the Conspiracy

Freedenberg seeks information about the formation of the conspiracy (Docket No. 61).

The Government objects because the Government is not required to furnish particulars relating to

the formation of conspiracies (Docket No. 85, Gov't Response at 17; see generally Docket

No. 63, Gov't Response to Freedenberg's Demand), see Bin Laden, supra, 92 F. Supp. 2d at 242-

43.  The court in Bin Laden denied similar relief because the conspiracy alleged there was global

and included a large number of people, describing what each person did and when in that

conspiracy was found to be "unduly burdensome," id. at 243.  While the conspiracy alleged here

is far more confined in time and geography, defendants are not entitled to the Government

outlining the particulars of its formation; this request is **denied**.

F.      Forfeiture

Finally, Bove and Franz demand that the Government particularize the property it intends

to seize as part of its RICO forfeiture claim and how that property is derived from the proceeds of

illegal activity (Docket No. 75, Bove Sched. 1, ¶¶ 23-24; Docket No. 84, Franz Atty. Aff. ¶¶ 27-

28).  Bove argues that there is no allegation that he received any proceeds of unlawful activity,

thus there is no basis for forfeiture.  If such evidence exists, Bove needs to be made aware of it to

prepare his defense.  (Docket No. 76, Bove Memo. at 22-23.)

Where an Indictment seeks forfeiture of profits derived from illegal activity, a Bill of

Particulars may identify the interest or property subject to forfeiture to satisfy the pleading

requirements of Federal Rule of Criminal Procedure 7(c)(2), United States v. Monsanto,

924 F.2d 1184, 1196 (2d Cir. 1991); see United States v. Grammatikos, 633 F.2d 1013, 1024 (2d

Cir. 1980) (Government providing bill of particulars specifying 14 pieces of property subject to

forfeiture upon defendant's conviction).  The specification of the property in <u>Grammatikos</u>

"enabled [the defendant] to marshal evidence in defense of them," 633 F.2d at 1024; <u>see</u> <u>United</u>

<u>States v. Ianniello</u>, 621 F. Supp. 1455, 1479 & n.105 (S.D.N.Y. 1985).

      The RICO forfeiture count alleges that, upon their conviction, defendants would forfeit

"any interest the person has acquired or maintained in violation of Title 18, United States Code,

Section 1962," interest in the criminal enterprise, property "constituting, or derived from, any

proceeds which the person obtained, directly or indirectly, form racketeering activity," with the

interest sought for forfeiture including but not limited to "any and all job related benefits,

specifically including the following property:  respective rights, titles, interest, memberships

and/or union offices or positions in International Union of Operating Engineers, Local 17, AFL-

CIO" (Docket No. 4, Superseding Indict. RICO Forfeiture ¶ 2 (a), (b), (c), ¶ 3).  These charges do

not particularize what property Bove, Franz, or the other defendants have that is subject to

forfeiture.  The criminal enterprise here is a labor union.  The alleged benefits subject to

forfeiture involve union membership benefits.  Does the Government intend to have these

defendants forfeit their union membership benefits?  Benefits derived from work obtained by

these defendants allegedly through means of the Local 17 Criminal Enterprise?  The Government

may be seeking both (and other forms of property) but the Indictment is not clear in identifying

the property at issue.  The Government should allege which of those offices or benefits are

derived from the criminal enterprise and which are not and are innocent union membership

benefits.  If other property is being sought, the Government should particularize this as well.

Thus, Bove and Franz' motions for this particularization is **granted**.

12

Courts have discussed the timing of this particular disclosure, see United States v. Galestro, No. 06 CR 285, 2008 U.S. Dist. LEXIS 53834, at *31-32, 34-35 (E.D.N.Y. July 15, 2008) (citing cases, holding that if government seeks specific assets that it may disclose that list to defendant 30 days prior to start of trial); United States v. Lino, No. 00 CR 632, 2000 U.S. Dist. LEXIS 18753, at *18 (S.D.N.Y. Dec. 29, 2000) (disclosure 60 days prior to trial held to be sufficient); United States v. Vasquez-Ruiz, 136 F. Supp. 2d 941, 944 (N.D. Ill. 2001) (bill of particulars provide 30 days before trial held to be adequate).  Disclosure at least thirty days before trial in this case should be sufficient to provide notice to the moving defendants of the assets claimed by the Government.

CONCLUSION

For the reasons stated above, defendants' omnibus motions seeking individual Bills of Particulars (Docket Nos. 61, 66, 65, 80, 70, 73, 75, 77, 84) or join in other defendants' motions for that relief (Docket Nos. 74, 78, 81), is **granted in part, denied in part** as outlined above. Defendants are entitled to particularization as to the "property" subject to the alleged extortion; the identity of the "others" involved in the conspiracy or its overt acts; and to the property subject to forfeiture as a RICO conspiracy.

So Ordered.

_____
/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        December 29, 2008

13