UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    **Hon. Hugh B. Scott**

                                                      07CR304S

CARL A. LARSON, et al.,                               **Order**

                    Defendants.

Before the Court are the parties' motions for reconsideration (Docket Nos. 98, 99[1]

(Government motions), 100[2] (defendants' joint motion)) of the Orders (Docket Nos. 90, 91)

regarding defendants' omnibus motions[3] (in particular, defendants' motions for Bills of

Particulars and discovery sought by them).  The original motions were argued on December 2,

2008 (text entry, Dec. 2, 2008), and deemed submitted on that day.  The Court then rendered one

---

[1]In support of its motion, the Government filed its Motion, Docket No. 99 (after an earlier attempt was terminated for ECF filing objections, see Docket No. 98); the Court hereinafter will refer only to the latter filed motion, Docket No. 99.  In opposition, all defendants jointly filed their response, Nos. 103, 104 (refiled pursuant to ECF guidelines), stating their reasons for particularization, Docket No. 104, at 6-10, and the timing of dispositive motions relative to particularization by the Government, id. at 10-13, Ex.

[2]In support of their motion, all defendants jointly filed their Motion, Docket No. 100.  In opposition, the Government filed its Response, Docket No. 102 (regarding the timing of filing bills of particulars relative to defendants' filing their dispositive motions), and Reply, Docket No. 105.

[3]Docket Nos. 61, 67 (Freedenberg), 66 (Lennon), 65 (Dewald), 80 (Eddy), 70 (Peterson), 73 (Kirsch), 74 (Caggiano), 75 (Bove, Docket No. 76, supporting memorandum for bill of particulars), 77 (Larson), 78 (Minter), 84 (Franz), and 81 (Edbauer).

Order on the various defense motions[4] for the Government to file individual Bills of Particulars (Docket No. 90) and considered in another Order the various forms of discovery sought by defendants (Docket No. 91).  Familiarity with these Orders is presumed.

All defendants now jointly seek reconsideration of the scope of particularization and discovery allowed in the earlier Orders (Docket No. 100), while the Government's motion (Docket No. 99) generally objects to any particularization being offered.  Following issuance of these Orders, defendants and the Government sought to extend the time for filing objections or to stay its effect while their respective motions for reconsideration were considered (Docket Nos. 92-94, 96-97).  Judge Skretny granted the stay of objections pending this reconsideration (Docket No. 101).  This Court then scheduled briefing (with responses due by February 19, 2009), and argument on March 4, 2009 (text minute entry, Feb. 4, 2009).

## BACKGROUND

This is a racketeering conspiracy, Hobbs Act conspiracy, racketeering forfeiture, and aiding and abetting prosecution involving the International Union of Operating Engineers, Local 17, AFL-CIO ("Local No. 17") (Docket No. 4, Superseding Indict.).  In the Superseding Indictment (hereinafter the "Indictment"), the Government alleges that Local No. 17 functioned as a criminal enterprise from about January 1997 to December 2007 (id. ¶ 1), with defendants, named officers and members of Local No. 17 (id. ¶¶ 2-8).  The alleged objective of the so-called "Local 17 Criminal Enterprise" was extortion by obtaining contracts from construction firms, taking non-union jobs (with their salaries and benefits), depriving contractors of their right to

---

[4]Docket Nos. 61, 66, 65, 80,70, 75, 77, and 84; remaining defendants filed motions joining in these motions, Docket Nos. 74, 78, and 81.

make business decisions free of outside pressure, and "property of construction contractors consisting of wages and employee benefit contributions paid or to be paid by said contractors for unwanted, unnecessary, and superfluous labor" (id. ¶ 10).

*Defense Motions*

Pertinent to these motions for reconsideration, defendants first separately moved for individual Bills of Particulars or joined in the pending defense motions for that relief.  There they sought identification of unindicted persons that allegedly acted with them in advancing the conspiracy.  They also wanted to learn the identities of the unnamed "among others" noted in several points in the Indictment.  In general, defendants sought to learn the particulars of their own alleged conduct.

Defendants also wanted to know what was the "property" that was subject of the attempted Hobbs Act extortion.  The Indictment alleges four types of property–the right to make business decisions free from outside pressure; wages and benefits paid pursuant to labor agreements with Local No. 17; wages and benefits paid for unwanted, unnecessary and superfluous labor; and employees' jobs and associated wages and benefits–and, as noted by Kirsch (Docket No. 73, Def. Atty. Affirm. ¶¶ 18, 23-24), defendants needed specificity as to which type of property they are accused of trying to extort.  Also defendants wanted particulars on what type of property alleged were benefits paid for "unwanted, unnecessary and superfluous labor" and what that phrase meant and what work the Government contended was included under that phrase.  Peterson, for example, argues that some target companies named in the Indictment hired Local No. 17 members, raising the factual issue of which hires were "superfluous" and

which were legitimate (Docket No. 86, Peterson Reply, at 3).  Defendants also wanted to learn

the interstate commerce connection to these alleged criminal activities for the Hobbs Act counts.

*Government's Omnibus Response*

Government initially responded that the Indictment was sufficiently detailed and

defendants were each presented voluminous discovery and that Bills of Particulars were not

warranted, that the Government is not required to outline its theories or marshal its evidence in

Bills of Particulars (Docket No. 85, Gov't Response at 2-20, 2-3, 5-8, Exs. B-D (discovery letters

from Government to defense counsel); see Docket No. 63, Gov't Response to Freedenberg

Motion for Bill of Particulars).  In response to Freedenberg's demand for a Bill, the Government

contends that he "utterly failed to adequately specify the basis for his needs for these particulars"

(Docket No. 63, Gov't Response to Freedenberg at 1).  The Government contends that the other

defendants fail to provide sufficient justification for particularization (Docket No. 85, Gov't

Response at 5).

*Orders*

The Court granted in part the particularization sought, that defendants were held to be

entitled to particularization as to the "property" subject to the alleged attempted extortion, to

identify the "others" involved in either the conspiracy or its overt acts (Docket No. 90, Order at

7-9, 13).  The Court, however, denied in part particularization as to defendants' specific conduct

and participation, the Government's theory of involvement in interstate commerce, and defendant

Freedenberg's request for information about the formation of the conspiracy (id. at 9-11).

A separate Order on discovery dealt generally with Rule 16 discovery by the Government

(implicitly including production of third party documents) (Docket No. 91, Order at 3-5).  The

4

Court ordered production of <u>Brady</u> materials up to thirty days prior to trial, consistent with local practice (<u>id.</u> at 9-10).

Defendant Dewald had moved for notice of evidence subject to a potential suppression motion (<u>see id.</u> at 13), but (as noted by defendants, Docket No. 100, Motion at 16) that motion was not fully addressed by the Court.  The Government responds that this mischaracterizes its action and the decision of the Court; that the Government generally gave notice that it intended to use the evidence and that the Court so noted this in its Order (Docket No. 102, Gov't Response at 25, citing Docket No. 91, Order at 13).  Upon this notification, the Government asserts that the duty then shifted to defendant Dewald to object (Docket No. 102, Gov't Response at 25-26).

*Government's Motion for Reconsideration*

The Government argues in its motion that defendants have not established a rationale for particularization (Docket No. 99, Gov't Atty. Aff. ¶ 2).  The "unwanted, unnecessary and superfluous labor" alleged in the Indictment arose from Supreme Court precedent, <u>see</u> <u>United States v. Enmons</u>, 410 U.S. 396, 400 (1973); <u>United States v. Green</u>, 350 U.S. 415, 417 (1956) (charging there that defendants extorted property from an employer for "imposed, unwanted, superfluous and fictitious services of laborers commonly known as swampers"), hence the Government concludes that the phrase does not need further particularization (<u>id.</u> ¶¶ 10-13) and, as used in the Indictment, was sufficiently definite (Docket No. 105, Gov't Reply at 7).  The Government claims that defendants are not entitled to any more detail because it would reveal the Government's theories and that disclosure within the Bill of Particulars would restrict the Government's case to the particulars furnished, <u>see</u> <u>United States v. Johnson</u>, 21 F. Supp. 2d 329,

339 (S.D.N.Y. 1998) (Docket No. 99, Gov't Atty. Aff. ¶ 14).  The Indictment merely charged

<u>attempted</u> extortion or conspiracy to commit extortion, not actual substantive extortion.  No

property is alleged to have been obtained; thence, the Government concludes that it should not

particularize what property (here "no-show" jobs or which contractors were compelled to furnish

what benefits to Local No. 17 members) was extorted where no such property was actually

obtained.  (<u>Id.</u> ¶¶ 16-17.)

*Defendants' Joint Motion for Reconsideration*

Defendants jointly contend that certain aspects of the Order authorizing particularization

needed further definition.  For example, it was not clear whether the Court intended only to have

the Government particularize one aspect of the property alleged to have been extorted (that is, the

"unwanted, unnecessary and superfluous labor" allegation) or all four categories of "property"

allegedly extorted (for example, wages and benefits paid by contractors pursuant to labor

agreements with Local No. 17, jobs of non-union laborers, or the right of contractors to make

business decisions free of outside pressure) (Docket No. 100, Defs. Memo. at 2-3).  Defendants

also seek identifying facts about unnamed "others" alleged in the Indictment (such as

descriptions, the person's role) (<u>id.</u> at 3).  The Government responds to this point that it produced

in discovery videotapes and Jencks Act materials that provide identification of the persons

referred to in the Indictment intended to be the unnamed "others" (Docket No. 99, Gov't Atty.

Aff. ¶ 2).

As for specific acts allegedly committed by any defendant, defendants contend that if the

Government persists in its position that its response is contained in its discovery, then that

discovery should be deemed to be the Government's Bill of Particulars and bind the Government

to the extent of that discovery (Docket No. 100, Defs. Memo. at 4-8).  Defendants seek notice of

these acts to avoid surprise if the Government introduces evidence of actions not noted in the

Indictment or produced in discovery (see id. at 8 n. 4; Docket No. 86, Peterson Reply at 3-4,

discussing United States v. Davidoff, 852 F.2d 1151 (2d Cir. 1988)).

      As for the element of affecting interstate commerce, defendants argue that the

Government needs to state which theory of affecting interstate commerce was alleged by the

Grand Jury so that the Government does not vary from that theory by arguing another theory at

trial (Docket No. 100, Defs. Memo. at 8-10, citing Stirone v. United States, 361 U.S. 212, 216-17

(1960); United States v. Parker, No. 00CR53A (W.D.N.Y. 2002)).  As the Second Circuit and

one commentator noted, "while a bill of particulars 'is not intended, as such, as a means of

learning the government's evidence and theories,' if necessary to give the defendant enough

information about the charge to prepare his defense, 'it will be required even if the effect is

disclosure of evidence or of theories,'" United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998)

(quoting Charles A. Wright, 1 Federal Practice and Procedure § 129 (1982)) (see id. at 10-11).

      Defendants want their particular discovery requests addressed, although the Order

generally mentioned Rule 16 discovery (id. at 12).  Defendants point to one of their earlier

moving papers (id., citing to Docket No. 89, Bove Reply Memo.; see Docket No. 89, Bove Reply

Memo. at 10-16), seeking third party documents (Docket No, 89, Bove Reply Memo. at 10-11;

Docket No. 100, Defs. Memo. at 12), notes of investigators (see Docket No. 89, Bove Reply

Memo. at 11), timely discovery of favorable Brady materials (see id. at 12-16; Docket No. 100,

Defs. Memo. at 12-16), and notice of Government's reliance upon hearsay evidence under

Federal Rule of Evidence 807 (see Docket No. 89, Bove Reply Memo. at 16).  They seek

reconsideration of the timing for the Government's production of Jencks Act materials, seeking it produced thirty days before trial (as per this District's practice) (Docket No. 100, Defs. Memo. at 16).

The Government opposes, first, because Bills of Particulars cannot be used to help formulate defense motions to dismiss for insufficiency (Docket No. 102, Gov't Response at 4-5). It distinguishes <u>Stirone</u> because that case did not involve a Bill of Particulars and such a Bill (had there been one in that case) would not have changed the result (<u>id.</u> at 18). As for the discovery at issue in this reconsideration motion, the Government concludes that Rule 16 does not provide for the blanket disclosure initially sought by defendants (particularly by Bove) (<u>id.</u> at 19-20). The Government cannot produce third party documents (such as from other law enforcement agencies) absent existence of a joint investigation with those agencies or indication that these materials are in the Government's possession or that the Government intends to use them in its case-in-chief (<u>id.</u> at 21, quoting <u>United States v. Green</u>, 144 F.R.D. 631, 640-41 (W.D.N.Y. 1992) (Heckman, Mag. J.)).

## DISCUSSION

I.      Motion for Reconsideration Standard

The parties discuss the applicable standard for reconsideration by this Court. Kirsch (for the defendants) argues that, in criminal cases in this Circuit, the strict civil standard for reconsideration is applied, that is there must be a showing of an intervening change in the law, newly discovered evidence, or need to correct clear error (Docket No. 104, Defs. Response at 2-3). Kirsch concludes that the Government has not shown any of the three circumstances necessary to exist to warrant reconsideration of the grants of particularization (<u>id.</u>). Kirsch also

urges that, since the grant of a Bill of Particulars is within the Court's sound discretion,

reconsideration of the exercise of that discretion would be inappropriate (id. at 4-5), but without

explaining how a similar reconsideration in Kirsch's (and the other defendants') favor would be

appropriate.

The Government argues that Judge Siragusa held in United States v. Amanuel,

No. 05CR6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006), that reconsideration would

be granted if the movant can "point to controlling decisions or data that the court

overlooked–matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court," id. (internal quotations and citations omitted) (Docket No. 105, Gov't

Reply at 3).  The Government concludes that the Court overlooked Enmons, supra, 410 U.S. 396,

in requiring particularization of the "unwanted, unnecessary and superfluous labor" contention

(id. at 4).

Since both sides have sought reconsideration (at points on the same issue), the Court will

reconsider its decisions on the scope of particularization or whether key decisions were

overlooked, which is discussed below.

II.     Bills of Particulars

Defendants seek reconsideration of several decisions which either did not grant

particularization or did not extend it to the full amount they sought.  The Government effectively

cross-moves opposing particularization as to the property subject to the Hobbs Act conspiracy.

As previously stated (Docket No. 90, Order, at 6), Rule 7(f) of the Federal Rules of

Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars, and it is

within this Court's discretion to order such a filing, Wong Tai v. United States, 273 U.S. 77, 82

(1927).  The Court, in exercising that discretion, "must examine the totality of the information

available to the defendants–through the indictment, affirmations, and general pretrial

discovery–and determine whether, in light of the charges that the defendant is required to answer,

the filing of a bill of particulars is warranted," United States v. Bin Laden, 92 F. Supp. 2d 225,

233 (S.D.N.Y. 2000) (Docket No. 85, Gov't Response at 4).  Bills of Particulars are to be used

only to protect a defendant from double jeopardy and to enable adequate preparation of a defense

and to avoid surprise at trial.  United States v. Torres, 901 F.2d 205 (2d Cir.), cert. denied, 498

U.S. 906 (1990).  The Government is not obligated to "preview its case or expose its legal

theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli,

428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime

charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir.

1967).  Defendants have the burden of articulating specific facts relating to the need for the

requested information (Docket No. 85, Gov't Response at 4).  Notwithstanding the above, there

is a special concern for particularization in conspiracy cases.  United States v. Davidoff, 845 F.2d

1151 (2d Cir. 1988).

     Thus, the parties (for different reasons) are seeking the Court's reconsideration of its

exercise of discretion.

     A.     "Property" and "Unwanted, Unnecessary, and Superfluous Labor"

     The Court initially granted defendants particularization as to what constituted the

"property" subject to the alleged attempted extortion engaged by defendants and to amply what

was meant by "unwanted, unnecessary, and superfluous labor" alleged in the Indictment (Docket

No. 90, Order, at 8).

1.       Categories of Property Alleged

Defendants seek reconsideration as to three other categories of property alleged in the

Indictment, namely the wages and benefits to Local No. 17 members, the loss of jobs by non-

union employees of the targeted contractors, and those contractors loss of the ability to make

decisions free from external pressure.

In its motion for reconsideration, the Government now argues that property need not be

specified since (among other reasons) the Indictment charges only attempted extortion, hence no

actual property was taken that would need to be identified (No. 99, Gov't Atty. Aff. ¶¶ 4-9).  But

even allegations of attempted extortion need specificity of what the proposed property the

Government contends defendants sought to extort, so that defendants are not surprised at trial

when an undisclosed property is introduced at trial or avoid double jeopardy if defendants later

are charged for attempting to extort different property or from different victims.

Thus, the Court reconsiders whether particularization is warranted for the other property

categories, aside from "unwanted, unnecessary and superfluous labor".

Each attempted extortion allegation in the Indictment asserted that defendants attempted

to extort property categories from a contractor for a given construction project (or projects) by

use of threatened force, violence or fear to the contractor and its employees (e.g., Docket No. 4,

Indict., Racketeering Act 2, A., at 12-14, attempted extortion of Zoladz Construction at various

project locations).

In United States v. Johnson, supra, 21 F. Supp. 2d at 339-40, the district court found that

defendants in that Hobbs Act extortion case were entitled to know the names of the corporations

that were the alleged victims and the construction projects related to the alleged extortion, but

denied all other particularization sought (including identity of those involved in the extortions, the property sought to be obtained, the nature of the threatened and actual violence, the identities of those threatened, and the nature of any payments made), id. at 339.  Defendants distinguish Johnson from this case on its facts and argue that particularization is necessary here to learn the scope of the allegations and that this Court has the discretion to order such particularization, as have other courts (Docket No. 104, Defs. Response at 5 n.2, 6 (citing cases[5])).

The scope of particularization described by the district court in Johnson is persuasive.  By specifying the contractor and the project in the Indictment in this case, this pleading furnishes sufficient information called for by the Johnson court and the Government **need not particularize further**, for example, which non-union jobs defendants sought to have Local No. 17 members take over and the particular benefits sought by Local No. 17 members.  The Indictment here also furnishes sufficient information as to the defendants' alleged attempts to exert outside pressure on contractors where any additional particularization would go to evidentiary detail.

Thus, defendants' motions for particularization as to these forms of property allegedly targets for defendants' extortion attempts are **denied**.  The Court next turns to the "unwanted, unnecessary and superfluous labor" that initially was found should be particularized.

-----

[5]E.g., United States v. Trie, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (granting bill of particulars on details of property alleged obtained in mail and wire fraud scheme); United States v. Ramirez, 54 F. Supp. 2d 25, 29-31 (D.D.C. 1999) (granting bill of particulars naming co-conspirators but denying bill as to amounts of drugs attributable to each defendant and evidence of defendants acting in concert with others).

2.      "Unwanted, Unnecessary and Superfluous Labor" and Innocent
        Transactions

The Government argues that "unwanted, unnecessary, and superfluous labor" is defined

by Supreme Court precedent, see Enmons, supra, 410 U.S. at 400; Green, supra, 350 U.S. at 417

(Docket No. 99, Gov't Atty. Aff. ¶¶ 10-13; Docket No. 105, Gov't Reply at 7).  These cases were

not considered in the original Order.  As Peterson noted in support of his original motion (Docket

No. 86, Peterson Reply at 2-3), some of the target companies hired Local No. 17 members and

the Indictment does not specify which of these hires were forms of extortion by the Local 17

Criminal Enterprise and which were innocent transactions, despite the Indictment specifying the

construction projects at issue in this case.  Defendants Peterson and Kirsch (and those defendants

joining in their motions) sought particularization as to otherwise innocent transactions and

alleged no-show jobs.  The Government seeks reconsideration of the decision to compel that

particularization, arguing (in part) any particularization would have to address, under Enmons

whether the union had a legitimate union purpose in seeking these jobs by extortive means (see

Docket No. 105, Gov't Reply at 10-11), rather than details as to the type of jobs sought.

These issues lead to factual inquiries whether a given transaction by defendants with a

given contractor would be called "unwanted, unnecessary and superfluous labor," despite the fact

that the Indictment only charges attempts at extortion.  Unlike the other categories of property

discussed above in which the Indictment affords basic information to defendants to avoid

surprise or the risk of double jeopardy, whether the Grand Jury considered a particular job to be

"unwanted, unnecessary and superfluous labor" or whether it considered no-show jobs in

charging these defendants (and, if so, which jobs fall within that no-show category) is not

13

addressed in this Indictment.  These defendants risk double jeopardy if the Government

separately pursues some of them for these hires as a product of extortion.  It is not clear from the

Indictment whether the jobs sought are for a legitimate union purpose or which jobs were or were

not sought for such a legitimate union purpose.  Since the Government would have the Court

reconsider the applicability of Enmons, supra, 410 U.S. 396, even if inapplicable as argued (cf.

Docket No. 105, Gov't Reply, at 4-5), defendants need to know which jobs are at issue in order

to defend the Government's apparent contention that these jobs were not sought for a legitimate

union purpose.  While Enmons, supra, 410 U.S. at 400, defines "unwanted, unnecessary and

superfluous labor," cf. Green, supra, 350 U.S. at 417 (defining such labor there as "swampers"),

as contrast to the lawful strike and resulting violence therewith, the Enmons Court described a

Hobbs Act violation "where unions used proscribed means to exact 'wage' payments from

employers in return for 'imposed, unwanted, superfluous and fictitious services' of workers,"

410 U.S. at 400 (citing to Green supra, 350 U.S. at 417).  Both Enmons and Green discuss

"unwanted, unnecessary and superfluous labor" as coerced and fictional labor, in effect

employers being compelled to pay for work they do not need or even get, such as no-show jobs.

Alleging in this Indictment labor sought at various construction projects generally was

"unwanted, unnecessary and superfluous labor" does not furnish enough information to

defendants to resist double jeopardy, avoid surprise, or prepare a defense for an accusation

regarding any particular job (legitimate or not) or job site.  Thus, defendants' demand for

particularization on this property issue **should be addressed**; defendants motions on this point is

**granted** and the Government's motion for reconsideration of this point is **denied**.

14

B.      Unindicted Co-Conspirators and Unnamed "Others"

The Indictment alleges that defendants acted with unnamed others in advancing the conspiracy.  Defendants seek the identities of these unnamed persons.  The Government responds that potential witness intimidation should preclude disclosure of the identities of unindicted co-conspirators, given the size of the Local 17 Criminal Enterprise (Docket No. 85, Gov't Response at 12).  The Government also argues that the volume of pretrial disclosure, cf. United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000), presented by the Government in this case (25 DVDs of recordings and 3 DVDs of copies of paper discovery) was not so voluminous as to require particularization on this issue (id. at 12-13, 11).  While the Indictment is extensive and detailed, it makes references to unnamed "others" in an effort to be comprehensive (see, e.g., Docket No. 4, Superseding Indict. ¶ 13), implying that other, unspecified persons are involved.  In the reconsideration motion, the Government now contends that the decision compelling this particularization is contrary to this Court's recent decision in United States v. Nam Hong, 545 F. Supp. 2d 281, 287-88 (W.D.N.Y. 2008) (Scott, Mag. J.).

The decision in Nam Hong is distinguishable.  Nam Hong was a discrete drug conspiracy charging five defendants conspired (among themselves and with others) to distribute 500 grams or more of MDMA, id. at 283-84.  There, the defendants sought particulars as to the statements of co-conspirators, the names of other participants, items the Court found were merely a veiled discovery request, id. at 287, 288.

In this case, the Indictment charges a long running conspiracy (since January 1997) to attempt by a dozen defendants to extort from various contractors.  Applying the factors previously noted (cf. Docket No. 90, Order, at 8-9) in Nachamie whether to grant a demand for

15

the identities of unindicted co-conspirators (that is, the number of conspirators, the duration and

breadth of the conspiracy, whether the Government otherwise has provided adequate notice of

the particulars, the volume of pretrial disclosure, the potential danger to co-conspirators and the

nature of the alleged criminal conduct, and the potential harm to the Government's investigation,

91 F. Supp. 2d at 572-73 (see Docket No. 85, Gov't Response at 11)), the scope of the conspiracy

(one union local) is limited and raises the specter of the potential for witness intimidation (id. at

12-13), the use of unnamed "others" leaves an unknown number of participants.  Upon review of

the Indictment and reconsideration of the motions thereunder, the Court again finds that

defendants **are entitled** to an individual Bill of Particulars on this issue.  As those identities are

learned, the Government should disclose them to defendants, as well as disclose such descriptive

or identifying information the Government has to identify these unnamed persons.

      C.     Particular Defendant's Acts

     In the initial Order, the Court denied defendants' request to have their respective acts

particularized by the Government (Docket No. 90, Order at 9-10).  The Government objected that

such particularization "is tantamount to a request for evidentiary details, which is not the proper

subject of a bill of particulars" (Docket No. 85, Gov't Response, at 14), see United States v.

Biaggi, 675 F. Supp. 790, 809 (S.D.N.Y. 1987).  Defendants have information about seventy-five

overt acts and discovery that reveals the dates, participants, locations, and other details about the

overt acts so that Bills of Particulars should be denied (id. at 16).

     Again, upon reconsideration, the Indictment and the discovery provided to defendants

provides the specifics defendants now seek; their motions for particularization on this ground is

**denied**.

D.      Interstate Commerce Allegations

The previous Order held that

"[u]nlike the other categories discussed above, the interstate commerce affected
by defendants' alleged activities goes either to the Government's theory of its
case, <u>see</u> <u>United States v. Perez</u>, 940 F. Supp. 540, 550 (S.D.N.Y. 1996) (Docket
No. 85, Gov't Response at 3), or seeks evidentiary detail to support that theory,
<u>see</u> <u>Torres</u>, <u>supra</u>, 901 F.2d at 234.  Defendants are thus **not entitled to
particularization** on the issue of interstate commerce,"

(Docket No. 90, Order, at 10, emphasis in original).

The Hobbs Act provides that whoever in any way or degree obstructs, delays of affects

commerce, where "commerce" is defined as interstate, international commerce and "all other

commerce over which the United States has jurisdiction," 18 U.S.C. § 1951(a), (b)(3).

The Indictment alleges that the Local 17 Criminal Enterprise "was engaged in, and its

activities affected, interstate commerce" (Docket No. 4, Indict. ¶ 1).  The Indictment alleges, for

example, unlawful obstruction, delaying and affecting interstate commerce and the movement of

articles and commodities in interstate commerce (although not specifying what those articles or

commodities were) by attempted extortion (<u>e.g.</u>, <u>id.</u>, Racketeering Act 1, A., at 10).  The

Indictment thus shows the outline of the interstate commerce theory the Government intends to

pursue–obstruction of flow of commerce by means of attempted extortion of property, jobs from

non-union contractors at various construction sites.

How this property affects interstate commerce or the movements of articles therein is an

evidentiary matter for the Government to prove.  As previously held (and as stated above), the

Government need not provide its theory or evidentiary details in support of that theory in Bills of

Particulars.  The Indictment and whatever discovery produced by the Government provide

defendants with knowledge of the Government's interstate commerce theory to avoid any surprise if the Government later argues some different interstate commerce theory at trial.  This is unlike the case in <u>Stirone</u>, <u>supra</u>, 361 U.S. at 217, where the Government initially alleged one theory (interference with importation of sand) in indicting defendants for violating the Hobbs Act but then tried the case on a different interstate commerce theory (interference with transportation of steel, necessary for construction of cement plant, for which the sand was imported).  The Indictment here, however, is akin to the general indictment alluded to later in that opinion, <u>see</u> <u>id.</u> at 219, that "even though it be assumed that an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."  Defendants' motion to reconsider the denial of further particularization as to the interstate commerce theory is **denied**.

III.    Discovery

  A. Third-Party Discovery

  Defendants seek reconsideration of the decision surrounding the Government's production of third-party materials.

  Absent proof that either the Government intends to use these documents in its case-in-chief or that they are in the Government's possession or arise from a joint Government-third party investigation, defendants cannot compel the Government to turn over third party documents.  The broad request for third-party documents is not authorized by Rule 16 of the Federal Rules of Criminal Procedure.  Upon reconsideration, defendants' motion is **denied**.

18

B.      Timing of <u>Brady</u> Materials Disclosure

Defendants next seeks reconsideration of the timing of the Government's production of

<u>Brady</u> materials.  Their concern is that the Government will dictate the timing of this production.

They urge that the Government be compelled to produce <u>Brady</u> (and Jencks Act) materials thirty

days prior to trial.  Consistent with practice in this District, defendants' request here is **granted**;

the Government is to produce both <u>Brady</u> and Jencks Act materials thirty days prior to trial.

C.      Notice of Suppressible Materials

Defendants seek reconsideration of the apparent inaction on Dewald's motion for notice

of evidence (Docket No. 65, Dewald Atty. Decl. ¶ 51).  There, Dewald sought notice of the

Government's intention to use evidence in its case-in-chief that is discoverable under Rule 16

(<u>id.</u>), <u>see</u> Fed. R. Cr. P. 12(b)(4)(B).  The Government responded that it intends to use all the

evidence disclosed or described in its responding papers at trial, including video and audio tape

recordings, and witnesses provide in-court identifications (Docket No. 85, Gov't Response, at

42).  The Government, in opposing reconsideration of this issue, point to Rule 16(b)(4)(A)

(probably referring to Rule 12(b)(4)(A)), and the shifting obligation to defendants to object upon

the general notice of the Government's intentions regarding evidence (Docket No. 102, Gov't

Response, at 25-26).  That statement is responsive to defendant's motion, <u>see</u> <u>United States v.</u>

<u>Gullo</u>, 672 F. Supp. 99, 105 (W.D.N.Y. 1987) (Elfvin, J.), even though the Government's

response in <u>Gullo</u> (as here) has not narrowed the scope of evidence that may ultimately be

introduced at trial, <u>id.</u>

Therefore, Dewald's motion for notice is deemed **moot**.

19

CONCLUSION

For the reasons stated above, defendants' joint motion for reconsideration (Docket

No. 100) is **granted in part** and the Government's motion for reconsideration (Docket No. 99) is

**denied in part** as outlined above.  Thus, for the portions of defendants' pending omnibus

motions seeking individual Bills of Particulars (Docket Nos. 61, 66, 65, 80, 70, 73, 75, 77, 84) or

join in other defendants' motions for that relief (Docket Nos. 74, 78, 81) reconsidered herein are

**granted in part, denied in part**.

Specifically, defendants are entitled to particularization as to the "property" subject to the

alleged extortion (to wit, the "unwanted, unnecessary and superfluous labor") and the identity of

the "others" involved in the conspiracy or its overt acts.  Defendants' motions for

particularization as to the three other cited categories of property allegedly extorted–Local No. 17

wages and benefits, loss of non-union jobs, and the loss of unfettered business decision making

by the affected contractors–is **denied**.  Also **denied** are defendants' motions for particularization

as to any defendant's acts and allegations of the theory of how interstate commerce was affected

herein.

Defendants are **denied** wholesale production of third party documents and defendant

Dewald is **denied as moot** his motion for notice of evidence subject to a potential suppression

motion.  Defendants' motions as to the timing of <u>Brady</u> and Jencks Act disclosure are **granted**.

So Ordered.

<u>    /s/ Hugh B. Scott    </u>
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      March 26, 2009

20