UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
07-CR-304S (6)

MARK N. KIRSCH,

Defendant.

## I.  INTRODUCTION

Presently before this Court is Defendant Mark N. Kirsch's second Motion for a New Trial brought under Rule 33 of the Federal Rules of Criminal Procedure.  (Docket Nos. 788, 809, 810.)  The government opposes Kirsch's motion.  (Docket No. 807.)  For the reasons discussed below, Kirsch's motion is denied.

## II.  BACKGROUND

On March 7, 2014, a jury convicted Kirsch of racketeering conspiracy, Hobbs Act conspiracy, and attempted Hobbs Act extortion.  Thereafter, on March 31, 2015, this Court acquitted Kirsch of attempted Hobbs Act extortion under Rule 29 of the Federal Rules of Criminal Procedure.  See United States v. Kirsch, No. 07-CR-304S (6), 2015 WL 1472122 (W.D.N.Y. Mar. 31, 2015).  This Court's March 31, 2015 decision contains a recitation of the background and procedural history of this case, familiarity with which is presumed.  See id.

Kirsch now stands convicted of Counts 1 and 2 of the indictment.  Kirsch's conviction on Count 1---racketeering conspiracy in violation of 18 U.S.C. § 1962(d)---is

1

premised on the jury's finding that Kirsch committed Racketeering Acts 4B and 5B, which charged attempted extortion under NY Penal Law § 155.40 (2).  See id. at *10. Kirsch's conviction on Count 2---Hobbs Act conspiracy in violation of 18 U.S.C. § 1951(a)---is supported by evidence relating to the attempted Hobbs Act extortion of Amstar Painting.  See id. at *6, *10.

At trial, Kirsch requested certain jury instructions relating to "true threats."  First, he requested the following instruction in relation to extortion, which this Court declined to give:

> ### True Threats
> Strong language that, if taken literally, may seem to communicate a threat, may not constitute a true threat in the sense of wrongful use of fear for a federal extortion charge. Threatening language which is merely "hyperbole," or, in other words, which is exaggerated to give heightened effect to a point one is making, in protesting something or trying to persuade someone, with no actual intent to carry it out against a specific individual or property is protected by the First Amendment, and is not a "true threat" under the extortion statute.  Only those threats which are so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution may be found to constitute the wrongful use of fear for a charge of extortion.

(Docket No. 426, p. 69.)

Kirsch also requested the following instruction relating to "fear" in the extortion context:

> ### Fear
> Your decision whether a person used, or threatened the use, of force, violence or fear, as a result of force or violence, involves a decision about whether the person making the threat truly intended to instill such fear, and whether a reasonable person to whom the "threat" was directed would have experienced such fear under all the circumstances.  A

> threat may be made verbally or by a physical gesture.
> Whether a statement or physical gesture by the defendant
> actually was a threat depends upon the surrounding facts.

(Docket No. 577, p. 4.)

Rather than Kirsch's "fear" instruction, this Court gave the standard "Sand"

instruction as follows:

> As I have just instructed you, you must determine whether a
> defendant used or threatened to use force, violence, or fear
> to unlawfully attempt to maintain the property.  Fear exists . .
> . if at least one victim experiences anxiety, concern, or worry
> over expected personal harm or business loss, or over
> financial or job security resulting from actual or threatened
> use of physical violence to property.  The existence of fear
> must be determined by the facts existing at the time of the
> defendant's actions.
>
> Your decision whether a defendant used or threatened fear
> of injury involves a decision about the victim's state of mind
> at the time of the defendant's actions.   It is obviously
> impossible to ascertain or prove directly a person's
> subjective feelings.  You cannot look into a person's mind to
> see what his state of mind is or was.   But a careful
> consideration of the circumstances and evidence should
> enable you to decide whether fear would reasonably have
> been the victim's state of mind.
>
> Looking at the situation and the actions of people involved
> may help you determine what their state of mind was.  You
> can consider this kind of evidence, which is called
> circumstantial evidence, in deciding whether a defendant
> attempted to obtain property through the use or threat of
> fear.
>
> You may also consider the relationship between the
> defendants and the alleged victim in deciding whether the
> element of fear exists.   However, a friendly relationship
> between the parties does not mean that you cannot find that
> fear exists.

Melber Declaration, Docket No. 788, Exhibit C; 3 L. Sand et al., Modern Federal Jury Instructions – Criminal, ¶ 50.02, at Instruction 50–13 ("Fear of Injury" instruction).

On July 7, 2015, Kirsch filed a second Motion for New Trial, arguing that this Court's jury instructions were erroneous under the United States Supreme Court's recent decision in Elonis v. United States. __ U.S. __, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015). Kirsch maintains that this Court incorrectly instructed the jury to consider only the victim's state of mind with respect to Kirsch's threats---"Your decision whether a defendant used or threatened fear of injury involves a decision about the victim's state of mind at the time of the defendant's actions"---rather than instructing the jury to consider *Kirsch's* state of mind with respect to those threats, which Kirsch argues is required under Elonis. (Melber Declaration, Docket No. 788, Exhibit C.) The government opposes Kirsch's motion both on timeliness grounds and on the merits.

### III.  DISCUSSION

**A.     Timeliness**

Under Rule 33 of the Federal Rules of Criminal Procedure, a motion for a new trial on grounds other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilt. See Fed. R. Crim. P. 33 (b). Rule 33, however, is not jurisdictional; the 14-day deadline may therefore be extended under Rule 45 (b)(1) See United States v. Owen, 559 F.3d 82, 83-84 (2d Cir. 2009). When a party moves for a new trial after the 14-day deadline has expired, a court may extend the deadline in its discretion upon a finding that the failure to file a timely motion is due to excusable

4

neglect.  Fed. R. Crim. P. 45 (b)(1)(B); <u>Owen</u>, 559 F.3d at 84 (noting that determining timeliness under Rule 45 is an exercise of a district court's "informed discretion").

The jury returned its verdict in this case on March 7, 2014.  (Docket No. 590.)  By rule, Kirsch's motion for new trial was due 14 days later, by March 21, 2014.  <u>See</u> Fed. R. Crim. P. 33 (b).  But this Court granted Kirsch's request to extend his filing deadline to March 28, 2014.  (Docket No. 607.)  Kirsch thereafter filed a timely motion for new trial, which, as noted, this Court granted in part and denied in part.  (Docket Nos. 610, 760.)

Kirsch filed his second motion for new trial on July 7, 2015, well outside the March 28, 2014 deadline.  (Docket No. 788.)  But the impetus for Kirsch's motion---the <u>Elonis</u> decision---was not issued until June 1, 2015.

There is no dispute that a significant intervening change in law constitutes a valid basis to extend time under Rule 45 (b)(1)(B).  <u>See</u> <u>United States v. Sprouse</u>, No. 3:07cr211-2, 2011 WL 2414322, at *1 (W.D.N.C. June 10, 2011) (reversed on other grounds); <u>United States v. Maricle</u>, No. 6:09-16-S-DCR, 2010 WL 3927570, at *3 (E.D.Ky. Oct. 4, 2010).  Citing <u>United States v. McConnell</u>, the government nonetheless argues that Kirsch waited too long after the <u>Elonis</u> decision---37 days---to file his second motion for a new trial and should have instead filed his motion within 14 days of the Supreme Court's decision.  No. 2:14CR1-009, 2015 WL 2365628 (W.D.Va. May 18, 2015).

In <u>McConnell</u>, the defendant requested an extension under Rule 45 (b)(1)(B) based on an *expected* significant change in controlling law.  <u>Id.</u> at *2-*3.  There, the

Supreme Court had not yet issued its decision in what the parties and court knew would be an impactful case.  Id.  In anticipation of the Supreme Court's ruling, the court extended McConnell's deadline to 14 days following the Supreme Court's decision.  Id. at *3.  McConnell in no way holds, however, that an extension based on a significant intervening change in law is limited to 14 days from the date of issuance.

In any event, the circumstances here are different from those in McConnell. Unlike McConnell, who knew that the Supreme Court would soon issue a decision that would significantly impact his case, Kirsch apparently knew neither that Elonis was being decided nor that the decision would impact his case.  In fact, Kirsch was unaware of the Elonis decision until June 4, 2015, three days after it was decided.  (Declaration of Brian M. Melber, Esq. ("Melber Declaration"), Docket No. 809, ¶ 8.)  And he did not know whether Elonis would impact his case until concluding a period of research and investigation.  (Id. at ¶¶ 8, 10, 11.)  McConnell is therefore factually distinguishable, and in any event, as noted, does not limit an extension based on a significant intervening change in law to 14 days from the date of issuance.

Rather, this Court finds that the 37 days Kirsch took to file his second motion for a new trial is both reasonable and justified and constitutes excusable neglect.  There are no allegations that Kirsch acted in bad faith or to delay, and accepting Kirsch's motion as timely results in no discernible prejudice to the government or significant delay in these proceedings.  See United States v. Munoz, 605 F.3d 359, 368 (6th Cir. 2010) (discussing factors to be considered in determining excusable neglect). Consequently, this Court finds that Kirsch's second motion for new trial is timely with an

extension under Rule 45 (b)(1)(B).   The government's request to deny Kirsch's motion as untimely is therefore denied.

**B.      Kirsch's Rule 33 Motion**

    **1.      Rule 33 of the Federal Rules of Criminal Procedure**

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may grant a motion for a new trial "if the interest of justice so requires."   A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and only in 'the most extraordinary circumstances.'"   United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).   "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134.   A reviewing court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict.  Sanchez, 969 F.2d at 1414 (internal quotation marks omitted).

    **2.      Jury Instructions**

Kirsch argues that he is entitled to a new trial because Elonis renders this Court's instructions to the jury erroneous.   A defendant challenging jury instructions must demonstrate "error and ensuing prejudice."   United States v. Quinones, 511 F.3d 289, 313-14 (2d Cir. 2007) (citation omitted).   Error is found when, "viewed as a whole, [the jury instructions] 'either failed to inform the jury adequately of the law or misled the jury about the correct legal rule.'" Id. at 314 (citations omitted); see also United States v.

Sabhnani, 599 F.3d 215, 247 (2d Cir. 2010).   "No particular wording or phrasing is required for an instruction to be legally sufficient, so long as, 'taken as a whole,' the instruction correctly conveys the applicable law."   United States v. Gansman, 657 F.3d 85, 91 (2d Cir. 2011) (citing Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).

At issue in Elonis was the mental state required by 18 U.S.C. § 875 (c), a statute that criminalizes the transmission in interstate or foreign commerce of "any communication containing any threat to kidnap any person or any threat to injure the person of another."   Elonis was charged with threatening to injure various people, including his estranged wife, a kindergarten class, and an FBI agent.   See Elonis, 135 S.Ct. at 2005-07.   At trial, he requested a jury instruction that "the government must prove that he intended to communicate a true threat."   Id. at 2007.   The trial court denied that request and instead instructed the jury that to convict, it must find only that Elonis communicated what a reasonable person would regard as a threat.   Id. at 2004, 2007.   In particular, the trial court instructed the jury that

> A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.

Id. at 2007.

In assessing Elonis's contention that the government was required to prove that he intended to communicate a true threat, the Court first found that 18 U.S.C. § 875 (c)

8

contained no particular mental state with respect to the elements of the offense.  Id. at 2008.  But as the Court noted, "[that] does not mean that none exists."  Id. at 2009.

Where no mental state is specified, the Court may "interpret [ ] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them."  United States v. X-Citement Video, Inc., 513 U.S. 64, 70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).  This is because "wrongdoing must be conscious to be criminal," and a defendant must be "blameworthy in mind" to satisfy the general rule that a guilty mind is "a necessary element in the indictment and proof of every crime."  Elonis, 135 S.Ct. at 2009 (quoting Morissette v. United States, 342 U.S. 246, 250, 252, 72 S.Ct. 240, 96 L.Ed. 288 (1952) and United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 66 L.Ed. 604 (1922)).

The Court then set out to interpret 18 U.S.C. § 875 (c) under the dictates of Carter v. United States, by endeavoring to read into the statute "only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'"  See Elonis, 135 S.Ct. at 2010; Carter v. United States, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (quoting X-Citement Video, 513 U.S. at 72).  After finding that § 875 (c) "requires proof that a communication was transmitted and that it contained a threat," the Court determined that "'the crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication."  Elonis, 135 S.Ct. at 2011 (quoting X-Citement Video, 513 U.S. at 73).  It therefore found that the mental state requirement must apply to the fact that the communication contains a threat.  See id.

9

But the Court stopped short of determining what mental state is required.  <u>See</u> <u>Elonis</u>, 135 S.Ct. at 2013-14 (Alito, J., concurring in part and dissenting in part) (criticizing the majority for "refus[ing] to explain what type of intent [is] necessary"); <u>Elonis</u>, 135 S.Ct. at 2018 (Thomas, J., dissenting) ("All [lower courts] know after today's decision is that a requirement of general intent will not do.").  Rather, the Court found error in the trial court's instruction that the government need prove only that a reasonable person would regard Elonis's communications as threats, because "[f]ederal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state."  <u>Id.</u> at 2012.

Construing the trial court's instruction as conveying a negligence standard, the majority held that "negligence is not sufficient to support a conviction under Section 875 (c)."  <u>Id.</u> at 2013.  But as noted, the majority did not determine the mental state that applies.  In the end, the Court rested on the undisputed point that "the mental state requirement in Section 875 (c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat."  <u>Id.</u> at 2012; <u>see</u> <u>id.</u> at 2013 (declining to decide whether recklessness suffices for liability under § 875 (c)).

Kirsch maintains that <u>Elonis</u> requires a new trial in this case.  It does not.

Kirsch argues that the jury instructions are erroneous under <u>Elonis</u> because this Court failed to instruct the jury to consider Kirsch's intent in determining whether he made threats as a means of extortion under either the Hobbs Act or the New York Penal Law.  Kirsch takes particular issue with the following line from more than 150 pages of

jury instructions:  "Your decision whether a defendant used or threatened fear of injury involves a decision about the victim's state of mind at the time of the defendant's actions."  (Melber Declaration, Docket No. 788, Exhibit C.)

The government maintains that Elonis does not apply because the extortion statutes at issue here are different from 18 U.S.C. § 875 (c), the statute at issue in Elonis.  In particular, the federal and state extortion statutes do not contain the same mental-intent void that the Supreme Court identified in § 875 (c).  Rather, the extortion statutes themselves require proof of a "guilty mind," without having to read any *mens rea* into them.  Elonis is therefore not controlling, in the government's view.

In this Court's view, the government's conclusion is correct:  Elonis does not control.

First, Elonis is a case of statutory construction, and as such, is limited to 18 U.S.C. § 875 (c).  No case reported thus far extends Elonis's holding beyond § 875 (c), and Elonis itself does not address either extortion scheme at issue in this case.

Second, the Elonis court, as a matter of statutory interpretation, read a *mens rea* requirement into § 875 (c) only to "separate wrongful conduct from otherwise innocent conduct."  Elonis, 135 S.Ct. at 2010.  It applied that rule of construction to uphold the principle that "wrongdoing must be conscious to be criminal" and a defendant must be "blameworthy in mind" before he can be found guilty.  Id. at 2009.  It is the absence of a *mens rea* requirement in § 875 (c) that drives the decision in Elonis.

But unlike § 875 (c), the extortion statutes at issue in this case already contain sufficient intent requirements.  There is thus no need to further separate innocent

conduct from wrongful conduct.  Cf. United States v. Ulibarri, No. CR 12-3182 JB, 2015 WL 4461294, at *21 (D.N.M. July 15, 2015) (finding that Elonis does not apply in sentencing guidelines context where the guideline already contains an intent requirement and already separated wrongful conduct from innocent conduct).

Kirsch's extortionate acts underlying Count 1---Racketeering Acts 4B and 5B---were done in violation of New York Penal Law 155.40 (2) (Grand larceny in the second degree), which states that "[a] person is guilty of grand larceny in the second degree when he steals property and when [t]he property . . . is obtained by extortion committed by instilling in the victim a fear that the actor or another person will (a) cause physical injury to some person in the future, or (b) cause damage to property . . . ."  Larceny is statutorily defined as when "*with intent to deprive another of property or to appropriate the same to himself or to a third party*, *[a person] wrongfully* takes, obtains or withholds such property from an owner thereof.  N.Y. Penal Law § 155.05 (1) (emphasis added).  It is a specific intent crime.

Larceny includes "*a wrongful* taking, obtaining or withholding of another's property . . . by extortion."  N.Y. Penal Law § 155.05 (2)(e) (emphasis added).  "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will cause physical injury to some person in the future; or cause damage to property . . . ."  Id.

Kirsch's criminal conduct underlying the Hobbs Act conspiracy in Count 2 is similar. Count 2 involved the attempted Hobbs Act extortion of Amstar Painting, in violation of 18 U.S.C. § 1951. Section 1951 (a) provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section [is guilty of a crime].

Extortion, as used in § 1951 (a), "means the obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951 (b)(2) (emphasis added). This is a general intent crime, see United States v. Arena, 918 F. Supp. 561, 569 (N.D.N.Y. 1986), and nothing in Elonis changes the government's burden of proof or requires assignment of a new, heightened *mens rea*.

Third, unlike § 875 (c), the extortion statutes do not impose a simple negligence standard. This Court's charge concerning the state extortion statute, § 155.40 (2), instructed the jury to consider two elements: first, whether the defendant attempted to *wrongfully* obtain property from its owner by extortion; and second, whether the defendant did so with the *intent to appropriate* the property of another person to himself or to a third person. See New York Criminal Jury Instructions (CJI) 2d, NY PL 155.40(2). Similarly, the charge concerning the federal extortion statute, 18 U.S.C. § 1951 (a), instructed the jury to consider three elements: first, whether the defendant *wrongfully* attempted to obtain the property of another; second, whether the defendant attempted to obtain this property with the victim's consent, but that the defendant

13

attempted to compel this consent by the *wrongful* use or threat of force, violence, or fear; and third, whether the defendant's actions affected interstate commerce.  See 3 L. Sand et al., Modern Federal Jury Instructions – Criminal, ¶ 50.02, at Instruction 50–10. Both require proof of more than mere negligence to convict.

In the absence of clear authority altering the proof requirements of Kirsch's counts of conviction, the extraordinary relief of a new trial is not warranted.  See Ferguson, 246 F.3d at 134.  The statute at issue in Elonis and the ones at issue here are too dissimilar to extend Elonis's narrow holding. *Mens rea* is read into a statute "[w]hen interpreting federal criminal statutes that are silent on the required mental state." Elonis, 135 S.Ct. at 2010.  This Court finds that the *mens rea* ambiguity found in § 875 (c) and the risk of criminalizing "otherwise innocent" conduct, which drove the holding in Elonis, are not present in the statutory schemes at issue here.  See Elonis, 135 S.Ct. at 2010 (citing Carter, 530 U.S. at 269).   Consequently, Elonis does not apply.[1]   See United States v. Godwin-Painter, Case No. CR 415-100, 2015 WL 5838501, at *3 (S.D.Ga. Oct. 6, 2015) (finding Elonis and its progeny inapplicable where statute at issue required specific intent).   This Court's jury instructions were thus not erroneous.  Kirsch is therefore not entitled to a new trial, and his second request for one is denied.

---

[1] Notably, Elonis itself falls short of imposing the intent-to-threaten requirement that Kirsch advocates. See Elonis, 135 S.Ct. 2023 (Thomas, J., dissenting) ("The majority today at least refrains from requiring an intent to threaten for § 875 (c) convictions.")

14

## IV. CONCLUSION

For the reasons stated above, the Supreme Court's decision in <u>Elonis</u> does not require a new trial in this case.  Accordingly, Kirsch's Second Motion for a New Trial is denied.

## V. ORDER

IT HEREBY IS ORDERED, that Kirsch's Second Motion for a New Trial (docket No. 788) is DENIED.

SO ORDERED.


Dated:  December 16, 2015
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
